OPINION OF THE COURT
Zelda Jonas, J.
On September 29, 1995, the defendant, Michael Mauro, was convicted after a jury trial of assault in the first degree, as *952 sault in the second degree, criminal possession of a weapon in the second degree, criminal use of a firearm in the second degree, reckless endangerment in the first degree, and criminal possession of stolen property in the fourth degree.
While the defendant was in remand status pending sentence, the Court of Appeals decided the case of People v Wright (86 NY2d 591 [1995]). Subsequent to the decision, the People informed this court, by letter dated December 1, 1995, that Sean McLaughlin, a witness for the prosecution, had been a police informant several years previously on a prior unrelated case which fact was never disclosed to the defense. The court immediately made the defense privy to the contents of the letter.
The defendant has now made a motion for an order, pursuant to CPL 330.30, to set aside the verdict upon the ground that the People did not provide the defendant with that information prior to or during trial in violation of the defendant’s constitutional rights under Brady v Maryland (373 US 83), and pursuant to People v Wright (supra).
The People have a duty to disclose all evidence in their possession that is favorable to the defendant and material either to the defendant’s guilt or punishment. This evidence is commonly known as Brady material (Brady v Maryland, 373 US 83). In respect to Brady violations, the failure to furnish exculpatory information where there has been a specific request for such information will warrant reversal if there is a reasonable possibility that the omitted evidence contributed to the defendant’s conviction (People v Vilardi, 76 NY2d 67). It has been conceded by the defendant that prior to trial he did not make a specific request for Brady material.
If there has been a general request for Brady material, as in this case, which the People fail to disclose, a verdict must be vacated if the omitted evidence creates a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different (People v Wright, supra, at 597; People v Chin, 67 NY2d 22, 33).
Even where there has been only a general request, the Court of Appeals has firmly established that when a prosecution witness has cooperated with the People to testify against the defendant in exchange for some quid pro quo on the part of the People, the existence of the agreement must be disclosed under Brady principles (People v Cwikla, 46 NY2d 434, 441; People v *953 Novoa, 70 NY2d 490, 496). In Cwikla (supra), the Court reasoned that the cooperation agreement is evidence that is both favorable and material to the defense since the reliability of the cooperating witness may well be determinative of the defendant’s guilt or innocence. If it is the cooperation agreement that induces the witness’s testimony, disclosure under Brady is necessary "for the jury to determine how much value to assign it in terms of assessing the witness’s credibility” (People v Novoa, supra, at 497).
However, for the first time, the Court of Appeals, in People v Wright (supra), held that the complainant-witness’s prior history as a police informant was Brady material even though the witness was not an informant in the defendant’s case.
In Wright (supra), the complainant, Fred Washington, told police that he met the defendant at a bar and then went to the defendant’s apartment. According to Washington, he entered the defendant’s bedroom with the defendant, removed his clothes in her presence, and sat on the bed. Defendant left the room and returned wielding a knife, lacerated his penis, and stabbed him in the chest. The defendant gave a completely different version to police claiming that she had been attacked by Washington as he entered her bedroom without any clothes.
The police report prepared by arresting detectives, Walczak and Keane, confirmed the defendant’s claim that Washington was already undressed when he entered her bedroom. However, at trial, Detective Walczak supported the complainant’s version of events and contradicted his own report while Detective Keane could no longer recall whether Washington had stated that he entered defendant’s bedroom without any clothing.
The People failed to disclose to the defendant that Washington had been a police informant on prior occasions with the same Albany Police Department where Detectives Walczak and Keane were employed. In Wright, the Court invoked the Brady analysis rather than establishing a per se rule. The Court found that Washington’s status as a police informant was evidence favorable to the defense since it could have provided the jury with the motive for the police detectives to favor Washington and not the defendant. In addition, the undisclosed evidence would have been favorable to the defense since it would have provided the defense with an explanation for the decision by the police to disbelieve and subsequently arrest the defendant who had promptly notified 911 following the incident (People v Wright, supra, at 596).
The Court held that the evidence was also material to the guilt or innocence of the defendant. There was a "close cred *954 ibility contest” at trial between the complainant and the defendant. The complainant’s "status as a police informant provided the defense with an explanation for Keane’s and Walczak’s switch to a version of the facts that supported the complainant’s contention that he undressed inside the bedroom” (People v Wright, supra, at 597). The undisclosed evidence was, therefore, material, since there existed a reasonable probability that had the evidence been disclosed to the defense, the result would have been different (supra).
Contrary to the defendant’s broad interpretation of Wright, the Court fell short of establishing a per se rule requiring disclosure as Brady material of a witness’s prior history as a police informant in all cases. In the Wright decision, the Court went into great detail in analyzing the facts of the case. For instance, the Court stated that "[m]anifestly, Washington’s status as a police informant was evidence favorable to the defense here” (People v Wright, supra, at 596 [emphasis added]) and "[ujnder these circumstances, Washington’s history as a police informant was both favorable and material to the defense” (People v Wright, supra, at 598 [emphasis added]); thus, evincing the Court’s refusal to establish a per se rule.
In the instant case, there is no evidence of a cooperation agreement between the police and Sean McLaughlin to induce the testimony of McLaughlin at Mauro’s trial. This court must, therefore, consider defense counsel’s motion in the wake of the Wright decision (supra).
Accordingly, a determination must be made as to whether or not the evidence of Sean McLaughlin’s prior history as a police informant, unrelated to the defendant’s case, constitutes Brady material.
This court finds there is nothing to indicate that McLaughlin’s prior status as a police informant years ago would be favorable and material to the defendant’s case.
Unlike Wright (supra), motive to lie and bias on the part of the detectives were not in issue during the trial. Therefore, the prior relationship between the police detectives and Sean McLaughlin is not favorable in this case as it was in Wright. The only reason for allowing the admission into evidence of the witness’s prior status as a police informant would have been to impeach the general credibility of the witness, Sean McLaughlin. While the general credibility of any witness is an issue that can be explored at trial, a witness’s prior status as a police informant that does not induce the testimony of the witness at trial does not necessarily make the witness any more *955 or less credible. Nor does Wright stand for the proposition that it is to be admitted as Brady material solely on the issue of general credibility.
Even though the jury was not informed that the witness was a police informant several years ago as quid pro quo for obtaining a more lenient sentence, the underlying acts of the crime charged involving McLaughlin’s possession and use of a sting gun as well as the reduction of the charge from assault to disorderly conduct were presented to the jury during defense counsel’s fierce cross-examination of the witness on the issue of general credibility.
Nor was McLaughlin’s prior status as a police informant material to the guilt or innocence of the defendant. Identity is the crucial issue in this case, i.e., whether the "right man” was seized after the shooting. While McLaughlin was the only individual to identify the shooter as the defendant in open court during the trial, there were other civilian witnesses who corroborated McLaughlin’s testimony by testifying that the shooter had a mustard-colored shirt and that the individual McLaughlin handed to police had a mustard-colored shirt. The police witnesses had testified that the defendant, Michael Mauro, was the individual handed to them by the bouncers, including Sean McLaughlin, at the nightclub.
The existence of McLaughlin’s previous relationship as a police informant, many years prior to the alleged incident involving the defendant and totally unrelated thereto, is not material to the issue of identity nor would it create a reasonable probability that the jury would reach a different verdict.
Accordingly, the defendant’s motion for an order, pursuant to CPL 330.30, to set aside the verdict is denied in its entirety.